Case number 162616 Mohamed Mokbel-Aljahmi v. United Omaha Life Insurance Company Argument not to exceed 15 minutes per side. Mr. Brenner, you may proceed for the appellant. Thank you. May it please the Court, I'm Jim Brenner representing United of Omaha Life Insurance Company. In this case, I'm going to be asking for three minutes of rebuttal time. All right. This case involves a claim for long-term disability benefits under a group disability insurance policy governed by ERISA. The fundamental question in this case is whether plaintiff failed to prove by a preponderance of the evidence that he is entitled to the group disability benefits that he seeks. And who is supposed to consider this preponderance? Is it the insurer or the court or both? I mean, if there's a preponderance of the evidence that's sent to the person who's conducting this ERISA, is that enough? It's my understanding, Your Honor, that the court decides as a matter of law whether the preponderance of the evidence has been shown or not. We're just trying, as the court, to determine whether the administrative record supports the payment of benefits. Is that right? That's correct, Your Honor. Why are you claiming that the record doesn't support it? Because I see that we've got a voluminous record with all kinds of treatment records and opinions of physicians that he's disabled, that the plaintiff is disabled here, and it seems that the most the insurance company has is some reviews of record that by people who've not actually examined the plaintiff who take issue with that. And the one physician that you did have to examine, the plaintiff seemed to agree that he was disabled, or at least his opinion was not adverse to the plaintiff. So maybe you could explain what the problem is here as to why you think the plaintiff is not disabled. Yes, Your Honor, I'll do that. The record in this case, if one goes through it with some care and deconstructs it, does not support the claim. The claim depends upon three physicians, Dr. Maas, Dr. Suleiman, and Dr. Rahim. Dr. Maas had about 17 consultations with plaintiffs, and if one looks at his records, what one finds out is that in the months leading up to the decision to deny the claim, that Dr. Maas found in his two consultations of October of December of 2014, that plaintiff had no back pain, that plaintiff had no tingling in his limbs. And this is set out in those two documents that are in the record, which is the consultation notes of Dr. Maas of December 2014 and April 2015. Okay, I'm sorry, I thought you said December of 13. December of 14. Okay. And April of 15. Okay. If you look further at the records of Dr. Maas, in the complaints section of those records, and those are the two records I just dated for you, Your Honor, if you look there, you'll see that the complaints of plaintiff are that he has back pain, he has neck pain, he has these other things. But if you look at the parts of the records which depend upon examination by the physician and review of systems by the physician, that's where you find the language of no back pain, no tingling, no neurological problems, which at best, from plaintiff's standpoint, contradict what the complaints of the plaintiff are as to his problems. Now, did the district court review it de novo, or did it look and find there was a preponderance in favor of the claimant? The district court reviewed it de novo. De novo. De novo. There's no discretionary authority for your client. That's correct, Your Honor. So it has to be de novo. That's correct, Your Honor. And so the district court has to decide, was there a preponderance of the evidence in favor of the claimant that was presented to your client, right? That's correct, Your Honor. Okay. Just trying to see what the review is because most of our cases like this come under discretionary authority. But that's not this case. No, Your Honor. The second doctor is Dr. Suleiman. Dr. Suleiman was an orthopedic surgeon. He only saw the plaintiff on a few occasions, and he stopped seeing him in 2013, more than two years before the final decision was made on the claim. The third physician is Dr. Rahim, who was an internist. Dr. Rahim's records are, again, self-conflicted. They're contradictory. On the one hand, he quotes plaintiff as saying that his neck bothers him. Dr. Rahim found the neck to be supple, non-tender, no swelling whatsoever. In other parts of Dr. Rahim's records, Dr. Rahim contradicts himself on various issues. For instance, Dr. Rahim in one paragraph says the fellow has a lung disorder, and then a sentence or two later he says he doesn't have a lung disorder. So if the court looks into the records, those records are unreliable. So those are the three physicians. On the other side of it, plaintiff also relies on Mr. Fuller. Mr. Fuller purports to be a rehabilitation expert. Mr. Fuller decided that plaintiff was permanently and totally disabled, based on his opinion of what the medical records showed, except Mr. Fuller has no medical training whatsoever. Mr. Fuller is not a physician. Mr. Fuller is not a nurse. Also, Mr. Fuller decided that plaintiff was totally and permanently disabled because he was, quote, functionally illiterate. This is contradicted by the fact that plaintiff, who is of Middle Eastern origin, because he was of Middle Eastern origin. You know, counsel, the problem I'm having with your presentation is you're going through what various doctors said and by necessity, since time is limited, you're picking out various comments that might not convey the entirety of their opinions. But the problem I'm having is you're not explaining with respect to these doctors, you're discussing how their opinion relates to whether he's disabled from the ability to carry out his occupation or any occupation that he could work at and be paid 60% of his earnings, which I think was the test for coverage. I don't want to tell you how to proceed with your argument, but it might help if you could focus a little bit more on how these opinions can illuminate whether the man can actually carry out the duties of his occupation or any occupation, really. Right, Your Honor. As in any risk of claim benefits case, the plaintiff here has to show that his medical condition is such that he deserves the disability benefits. There is no question in this case that for several years we paid disability benefits, and therefore we did not dispute and do not dispute today that he has some disability. The question is, under the gainful employment prong of the disability definition in this case, whether he is permanently and totally disabled from performing any gainful occupation. And he has to prove that by medical evidence or other evidence that he can't perform any gainful employment. Now, if you end up with three physicians on whom he relies for a medical basis for that claim and two of them have records which are contradictory and which in part say that he's not disabled from any gainful employment because of a neck problem or because of a back problem, then you take out from under him the medical evidence on which he has to prove his case. If you take out from under him his rehabilitation expert, Mr. Fuller, and Mr. Fuller's opinion is based on nothing of medical value and is based on a functional illiteracy claim which is contradicted by the fact that Mr. Aljami functioned for many, many years in this country with no problem of functional illiteracy. There's no evidence whatsoever that he couldn't communicate and he worked for English-speaking employees, et cetera. So that is not there. On the other hand, we've got the issues of Social Security and the functional capacity evaluation. But your company objected to the Social Security records at one point early in the litigation when the plaintiff's lawyer was trying to utilize them, and so that sort of precludes you from now trying to rely on the Social Security disability records, doesn't it? No, Your Honor. I respectfully disagree with you. What happened there is we tried throughout the case to find out what we could about Social Security, and for a while we were stonewalled. Eventually we got some records that show that he had made a claim, that his claim had been denied by Social Security. When the administrative record was closed, the lawsuit was filed, and we're in this case then. After the parties filed their briefs, plaintiff then tried to submit as part of the record a new document that was not in the administrative record, and United objected to that, and the district court agreed because of the rule against expanding the administrative record once it's closed. So that's it. It came after the briefs were filed, and it had nothing to do with our interest in the Social Security. Now, Social Security is important, as Your Honors know, under Calvert, because while Social Security is not binding on what happens in the disability benefits under policy area, it is nevertheless not meaningless. In this case, we have an individual who's been unable to persuade Social Security that he is disabled, that he cannot perform any work, so that supports our case. Your red light's been on quite some time now. Yes, Your Honor. Thank you.  May it please the Court. My name is Randall Phillips, and I'm here for the appellee, Muhammad Mokbel-Aljami. First, I'd like to address one of the questions of Judge Seiler. It has to do with the standard of review. The standard of review in the district court was de novo. The standard of review for this court is clear error. It is not de novo, and that's because all of the issues, as Mr. Brenner argued today to the Court, are questions of fact and weighing of the fact by the district court judge. And in this case, the district court judge had all of this evidence in front of her. The district court judge considered all of these issues in terms of the inconsistency of some of the medical records and noted that in her opinion, and the district court considered all of the plaintiff's medical evidence, including the four MRIs that were positive, the EMG that was positive for chronic lumbar radiculopathy and cervical radiculopathy, all of the evidence of the plaintiff's doctor's physical capacity evaluations limiting him to a very limited amount of activities, functional activities, and their own surveillance for four days that showed how limited his activities were during those four days. Now, because this is a question of clear error, also I think it's very important to note that they don't point out their own doctor, Dr. Salama, who was the independent medical doctor that the defendant appellant had examined, examined my client. And he agreed with the exception of one point, and that had to do with lifting 10 versus 5 pounds. But he agreed with all of the other restrictions of the plaintiff's treating doctors. And not only did Dr. Salama examine my client, but he reviewed all of those same records that the defendant now is saying were unsupportive of my client's condition. So what the defendant has is they went beyond Dr. Salama after they first terminated him. And this is on the any occupation standard. We appealed. They reinstated him based on Dr. Salama's IME. And then they went out and got another doctor to review the records with very little additional information, and another vocational expert to evaluate his vocational situation and terminated him again. And they did that by not giving the vocational expert the plaintiff's medical opinions, or even Dr. Salama's medical opinions. So the judge reviewed all these things and made this weighing of the evidence, and I don't believe that there's any way that there can be a finding of clear error here. Now, one other thing that I want to point out is that even if we were to eliminate the plaintiff's doctor's opinions, we have the opinion of their doctor, Dr. Salama, who confirms that my client is disabled based on the opinions that he saw from my client's doctors. And then they have the reviewing doctor who did not examine my client, Dr. Lambour, who says my client is still limited to sedentary activities. And we have their vocational expert from UDC, Ms. Thal, who on her second evaluation of 6514, said that there were only two sedentary jobs out there that he might be able to perform. One of them was this surveillance security monitor job, which under the Dictionary of Occupational Titles was last updated in 1977, and we presented vocational evidence of Mr. Scott Silver, who actually studied and researched that job recently and said that job doesn't exist anymore. In the DOT, it's listed as a government job. That job now is a TSA job or a casino security job with a much higher physical demand requirement than it was in the DOT back in 1977. And it would not be a sedentary job. The second job that the vocational expert found was this assembler semiconductor. And that job, according to the defendant's own vocational expert, pays a wage of $1,410 a month. $1,410 a month does not meet the standard of gainful occupation under the policy. Under the policy, as I think Judge Clay mentioned, it's 60% of the wages. 60% of the wages is $1,467 a month. So that job doesn't even meet the requirements of the policy to be gainful occupation. So even under their doctor's evaluation and their vocational expert's evaluation, the plaintiff would be found or considered disabled under the policy. And I'd like to talk to a couple things that counsel mentioned. One is Mr. Fuller. Mr. Fuller was not submitted as a doctor. He's a vocational expert. And he interviewed and evaluated Mr. Mok-Belajami and concluded that based upon all of the opinions that he was given, the defendant's opinion, the defendant's doctor's opinion, that he would be unemployable as a vocational matter. Second point, counsel mentions the functional capacity evaluation. That is something that wasn't required under the policy. The defendant does not identify a policy provision that was breached. They don't argue that in the brief. They did not raise that in their termination letter. And they affirmatively said in their termination letter that they provided a full and fair review. And that is just another matter of evidence. If there was a functional capacity evaluation, that would be weighed among other things. The fact that there isn't one, it's something that's not there that the judge can weigh in favor or against the plaintiff. And that comes under the clear error standard as well. The final point has to do with the Social Security issue. The evidence in the record did not establish clearly whether there was a final determination on Social Security. So we attempted to supplement the record by showing that the initial denial had been appealed to the Appeals Council and was pending at the Appeals Council for Social Security. That's what the judge denied. Here, the defense counsel wishes to again go outside the record to say that there's some further denial and actually it's still pending in the federal district court in Detroit. I will entertain any questions that you have. Well, apparently there are none. Thank you. Any rebuttal? Yes, Your Honor, thank you. United agrees that factual determinations are governed by clear error under ERISA law. At the same time, I raise the question, if the medical records are contradictory, if Dr. Moss, for instance, quotes plaintiff as saying I've got neck pain, I've got back pain, I've got this and that, and Dr. Moss's own review notes say that there is no back pain, there is no tingling, there is no this, that, or other thing, these are contradictory findings in those notes, and if the district court judge nevertheless ignores those findings, ignores those contradictions, and relies on that medical record, I submit that's clear error. Thank you. Plaintiff talks about Dr. Salama and mischaracterizes what his finding was. Dr. Salama did an IME and a medical record review, both of those, so he actually examined the plaintiff here. I'm sorry, I lost you. He was the IME in what? He was the IME, and he also did medical record review. Okay. He combined those two functions. Okay. This is from his report. Based upon my clinical examination and the EMG findings of the upper and lower extremities, I do believe that Mr. Aljami is able to work as a welder. He should have restrictions of no lifting of more than 10 pounds, with no bending, twisting, and squatting more than five times an hour. He should continue with his medication regimen. I do recommend trigger point injections from time to time for pain. At this point, I am unable to determine if the restrictions are permanent without updated imaging studies and an updated EMG. So that's what he actually found. As for the FCE, that was raised because we attempted, that is, United attempted to have a functional capacity evaluation, which this court, in the Shaw case and the Huffaker case, deemed to be a very helpful, useful, verifiable way of determining what somebody's disability extent is. We tried to have that, and the plaintiff refused to show up. Dr. Suleiman agreed that it would be fine if we had him FCEd. The plaintiff refused to do that. Thank you, Your Honor. If there are no questions, I am done. Thank you very much. The case is submitted.